IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

RICHARD M. BRUNSMAN,

      Appellant,

 v.                                  Case No. 5D16-2300

ANGELA L. BRUNSMAN,

      Appellee.

_____/

Opinion filed December 22, 2017

Appeal from the Circuit Court
for Seminole County,
John D. Galluzzo, Judge.

Moses R. Dewitt and Sherri K.
Dewitt, of Dewitt Law Firm, PA,
Orlando, for Appellant.

No Appearance for Appellee.

COHEN, C.J.

Richard Brunsman ("Former Husband") appeals a final judgment dissolving his marriage to Angela Brunsman ("Former Wife"). He argues that the trial court abused its discretion in awarding Former Wife alimony; the court failed to make the requisite findings in imposing a life insurance requirement; and the court abused its discretion in awarding Former Wife attorney's fees. We affirm in part, reverse in part, and remand.

The parties were married for fourteen years and had one child.[1] Former Wife petitioned for dissolution of marriage in 2010. A central issue at trial was Former Wife's need and Former Husband's ability to pay alimony. Former Wife testified that she was earning slightly over $3100 per month ($37,464 annually) and had a monthly household deficit of $682. Former Husband testified that his annual salary was $44,400, although his 2014 payroll records reflected an annual income of $51,540 once commission and bonuses were included.

Former Wife claimed an ownership interest in the home where the former couple resided during the marriage. She testified that Former Husband had told her that she was on the deed and as a result, the parties put a substantial amount of money into the property. However, Former Husband's father actually owned the home; Former Husband had executed a fraudulent quitclaim deed making it appear that Former Wife had been placed on the deed.[2]

At the time of trial, Former Wife was in bankruptcy. This was partially because after temporary support was awarded, Former Husband lost his job and stopped making alimony payments.[3] Former Husband never resumed paying alimony, despite having obtained a new job. At the conclusion of trial, the court found that Former Husband had almost $700 in child support arrears and over $48,000 in alimony arrears. The court

---

[1] The child was almost an adult at the conclusion of trial.

[2] Former Wife did not file an answer brief in this appeal. No issue is raised as to the disposition of the property or the impact of the monies spent improving the property in terms of equitable distribution. However, Former Husband's preparation of a fraudulent quitclaim deed is relevant to the trial court's determination of his credibility.

[3] The record is unclear as to the exact length of Former Husband's unemployment.

ordered Former Husband to pay $500 per month in non-modifiable durational alimony for five years. The court rejected the representations in Former Husband's updated financial affidavit, finding it could not "accept [the affidavit] as being truthful based upon his prior untruthful statements under sworn affidavits and documents."

In the portion of the final judgment related to child support, the court found that Former Husband's gross monthly income was $4250, while Former Wife's gross monthly income was $3122, but did not make any findings regarding the parties' respective net incomes. Consistent with its oral pronouncement at trial, the court ordered Former Husband to pay non-modifiable durational alimony and made findings pursuant to section 61.08, Florida Statutes (2010). The court also ordered that the alimony arrearages be paid once the durational alimony obligation was paid in full. The court required Former Husband to maintain a $70,000 life insurance policy to secure the alimony award. The court found that Former Wife was entitled to attorney's fees, reserving on the amount. No order on the amount of attorney's fees appears in the record on appeal.

Former Husband moved for rehearing. He argued that the trial court erred in ordering him to pay alimony by using his gross income rather than net income in calculating the award, ordering that alimony was non-modifiable, and failing to make the appropriate findings regarding arrearages. He also challenged the life insurance requirement, arguing that he was uninsurable and could not afford a policy. The court denied Former Husband's motion without a hearing. This appeal followed.

We affirm the final judgment except as it relates to certain aspects of the durational alimony award. We affirm the imposition of alimony and find no abuse of discretion in the determination of arrearages. However, section 61.08(7) specifically provides that

3

durational alimony awards are modifiable. § 61.08(7), Fla. Stat. (2010). Absent agreement between the parties or findings of exceptional circumstances, neither of which are implicated in this case, imposing a non-modifiable alimony requirement is error. Cf. Smith v. Smith, 689 So. 2d 1312, 1312 (Fla. 5th DCA 1997) ("[T]here is no provision in the law for 'non-modifiable permanent alimony' . . . ."). On remand, the court must strike the language in the alimony award that precludes the possibility of future modification.

Former Husband also correctly notes that the trial court utilized gross rather than net income in determining the appropriate amount of the award.[4] See, e.g., Brady v. Brady, No. 5D17-1370, 2017 WL 5180738, at *1 (Fla. 5th DCA Nov. 9, 2017) ("[T]he trial court erred in basing the alimony award on the parties' respective gross incomes and not their net incomes."); see also Topel v. Topel, 152 So. 3d 863 (Fla. 5th DCA 2014) (reversing alimony award in part because trial court erred in using gross income instead of net income); Clore v. Clore, 115 So. 3d 1100 (Fla. 5th DCA 2013) (vacating alimony award and remanding for redetermination of husband's income based on net rather than gross figures). We reverse and remand for the court to make the relevant findings as to the parties' net incomes and to use those figures in recalculating the amount of the durational alimony award.

We also reverse the portion of the final judgment ordering Former Husband to secure the alimony award with life insurance. Section 61.08(3), Florida Statutes (2010), governs imposition of a life insurance policy as security for alimony:

> To the extent necessary to protect an award of alimony, the court may order any party who is ordered to pay alimony to purchase or maintain a life insurance policy or a bond, or to

---

[4] In the final judgment, the only findings regarding the parties' incomes are found under the portion addressing child support, and those findings only relate to gross income.

4

otherwise secure such alimony award with any other assets which may be suitable for that purpose.

The record evidence must support the insurance requirement, and the trial court must make findings as to the cost of insurance, the amount being required, and any special circumstances justifying the need for a former spouse to maintain the policy. Alpha v. Alpha, 885 So. 2d 1023, 1033–34 (Fla. 5th DCA 2004). Besides Former Wife's request in her initial dissolution petition, the record lacks any testimony or evidence regarding the cost of an insurance policy or any special circumstances justifying its imposition. Therefore, we reverse the requirement that Former Husband maintain an insurance policy to secure the payment of alimony. On remand, the trial court shall either make specific findings justifying its imposition or strike the benefit from the final judgment.

As to the trial court's determination that Former Wife is entitled to attorney's fees, the record is devoid of an actual award or a determination of the amount of fees. Therefore, the attorney's fee issue is not ripe for this Court's review, and we decline to address Former Husband's argument at this time. See Holmes v. Holmes, 100 So. 3d 745, 745–46 (Fla. 2d DCA 2012).

While we are compelled to reverse portions of the final judgment, we note that many of the issues resulted from Former Husband's lack of veracity and the parties' failure to provide the court with the information necessary to make a sound decision. This was a lengthy, contentious case that was presided over by numerous different trial judges. Overall, the trial court did the best it could with the information provided.

AFFIRMED IN PART; REVERSED IN PART; and REMANDED.

SAWAYA and EDWARDS, JJ., concur.

5